IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAYNE RESPER, | * | |
|     Plaintiff, | | |
|     v. | * | CIVIL ACTION NO. PJM-13-3310 |
| BOBBY SHEARIN, et al., | * | |
|     Defendants. | | |
| | *** | |

## **MEMORANDUM OPINION**

Pending is a Motion to Dismiss, or in the Alternative Motion for Summary Judgment filed by Defendants, former Warden Bobby P. Shearin, Lt. Jason Harbough, Lt. Donna Durst, and Sgt. Sean McKenzie. ECF No. 19. Plaintiff has not responded.[1] Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion will be granted.

## **Background**

Plaintiff Wayne Resper, an inmate currently held at the Western Correctional Institution ("WCI"), filed the instant civil rights complaint alleging that on October 7, 2010, while housed at the North Branch Correctional Institution ("NBCI"), Defendants exposed him to pepper spray for more than 18 hours and failed to provide him medical attention. ECF No. 1. On that same date, Plaintiff alleges Defendants seized his property, including legal materials. He claims that he was

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on August 28, 2014, Plaintiff was notified that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his case. ECF No. 20. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. *Id*. Plaintiff, sought and was granted, extensions of time, to and including February 25, 2015, to respond to the dispositive motion. ECF Nos. 21, 22, 24, & 26.

not provided a safe means to get in and out of his bunk, resulting in a fall.[2]  ECF No. 4. Additionally, Plaintiff alleges he was housed with mentally ill inmates who contaminated the cells with feces, blood and urine. *Id*. He also claims he was denied bedding, toiletries and cleaning supplies. Lastly, he states that he was not provided a secure means to send mail, particularly legal materials. *Id*.

Defendants offer that from March 2, 2010 to July 6, 2011, Plaintiff was housed in NBCI Housing Unit ("HU") #1 on Disciplinary Segregation. ECF 19, Ex. 2.  On October 7, 2010, several inmates on HU#1 refused to close their cells, resulting in correctional staff extracting those inmates from their cells. *Id*., Ex. 3. During the cell extractions an officer was stabbed by an inmate. *Id*. The stabbing of the correctional officer triggered other inmates to act disruptively throughout the 3-11 shift, which resulted in multiple cell extractions and the use of pepper spray. *Id*. During the incidents several inmates used their cell chairs as weapons against officers and encouraged other inmates to do the same. *Id*., Exs. 2 & 4.  In order to gain control of the tier, Captain Stotler ordered all chairs, including Plaintiff's, removed from the cells until the situation was resolved.  *Id*., Exs. 2 & 4. Plaintiff was not directly sprayed with pepper spray during the disturbance in the housing unit. *Id*., Exs. 1 & 4.

Plaintiff filed several complaints through the Administrative Remedy Procedure ("ARP") alleging he was deprived of hygiene products, bedding, and materials to bathe for more than 18 hours. *Id*., Ex. 5.  An investigation of Plaintiff's ARP revealed that except for the inmates who were physically extracted from their cells, all inmates who complied with the cell searches, were back in their cells within half an hour. Plaintiff was returned to his cell the night of the search. Inmates received bedding and hygiene products the following day. *Id*. Exs. 5 & 6.

---

[2] Plaintiff asserted the same claims in *Resper v. Shearin*, Civil Action No. PJM-13-2992 (D. Md.)

Plaintiff filed an ARP on November 22, 2010, claiming that he was deprived of shower shoes and a shower on October 10, 2010. *Id.*, Ex. 7. An investigation of Plaintiff's claim revealed that a mass shakedown was conducted during which inmates were told to wear their shower shoes out of their cell in order to be strip searched. *Id.* Any property left in the cell was inventoried and packed in order to bring the inmates into compliance with the policies concerning allowable property. Plaintiff left his cell without wearing his shower shoes and they were packed with his other property. *Id.* He was offered the opportunity to shower but declined because he did not have his shower shoes. *Id.*

Plaintiff filed a grievance with the Inmate Grievance Office ("IGO) concerning the confiscation of his personal property and legal documents. *Id.*, Ex. 8. A hearing was conducted by Administrative Law Judge ("ALJ") Eileen Sweeney. The ALJ found insufficient evidence that Plaintiff had been denied hygiene products or that the confiscation of his materials denied him access to the courts. The ALJ did find that certain personal property items and legal documents were not returned to Plaintiff. *Id.*

On October 7, 2010, and on later dates, inmates on HU#1 caused their toilets to overflow which caused flooding in other areas in the unit. *Id.*, Ex. 10. Plaintiff alleges that it took between seven and 30 days to be provided supplies to clean his cell of feces and/or pepper spray. He alleges that feces on the HU exposed him to the risk of illness. An investigation of Plaintiff's ARPs concerning these claims demonstrated that "Blood Spill" workers were called to clean up the mess after each incident. *Id.*, Ex. 10. A hearing before ALJ Sweeney was held regarding Plaintiff's claim of cell contamination. Lt. Harbaugh testified that a particular inmate on the tier was known for flooding the unit and throwing feces. *Id.*, Ex. 11. Harbaugh testified that after each incident the group responsible for sanitizing the unit, referred to as "Blood Spill" was contacted

and the area cleaned as soon as possible. The Blood Spill team is available 24 hours a day and cleans all reported contaminated areas, including inmate cells, as soon as it is safe to do so. *Id*., Ex. 11, pp. 6-7.

Plaintiff filed a complaint with the Inmate Grievance Office ("IGO") complaining that he twisted his ankle after his chair was removed from his cell during the October 7, 2010 incident. *Id*., Ex. 4. The grievance was dismissed for failure to state a claim upon which administrative relief could be granted. *Id*. On October 25, 2010, Plaintiff was seen in the infirmary complaining of an ankle sprain caused when he was getting down from his bunk. *Id*., Ex. 9. He was given ice and instructed to keep his ankle wrapped and elevated. He was seen on October 27, 2010, by Dr. Majid Arnaout, who also diagnosed Plaintiff with severe ankle sprain. *Id*.

## Standard of Review

A.   Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.     Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A. Supervisory Liability

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that

posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Plaintiff's claims against former Warden Bobby Shearin is solely based on the theory of respondeat superior. Plaintiff has failed to establish that the conduct of any of the named officers posed a pervasive and unreasonable risk of constitutional injury.  Plaintiff's complaint against Shearin shall be dismissed.

B.     Access to Courts

Prisoners have a constitutionally protected right of access to the courts.  *See Bounds v. Smith*, 430 U. S. 817, 821 (1977).  However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'"  *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355.  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the

doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Plaintiff has failed to provide any information much less demonstrate how his access to courts was thwarted, and has demonstrated no injury as a result of the confiscation of his legal materials. Thus, his claim fails. *See Bernadou v. Purnell*, 836 F. Supp. 319, 325 (D. Md. 1994) (no showing of actual harm from confiscation of legal materials during shakedown).

B.  Fourth Amendment/Property Claim

Prisoners have no legitimate expectation of privacy in their cells; therefore the Fourth Amendment is not applicable to routine searches of prison cells. *Hudson v. Palmer*, 468 U.S. 517 (1984). In the case, as here, of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post-deprivation remedy.[3] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[4] As noted, above, even if Plaintiff's property was improperly lost or destroyed, such a claim does not rise to a constitutional violation.

C.  Lack of Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

---

[3] Plaintiff may avail himself of remedies under the Maryland's Tort Claims Act and through the Inmate Grievance Office ("IGO"). Plaintiff sought relief through the IGO where succeeded in securing an Order for the return or reimbursement of his lost property.

[4] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be

judged in light of the risk the defendant actually knew at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001) citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

There is no evidence that correctional Defendants impeded his treatment for pepper spray exposure or for his sprained ankle. Plaintiff was seen the day after pepper spray was used in his housing unit and offered no complaints regarding his exposure.[5] Further, Plaintiff was promptly seen regarding his ankle injury and received appropriate treatment. Even assuming that the sprained ankle and exposure to pepper spray constitute a "serious medical condition," there is simply no evidence that any of the named Defendants were deliberately indifferent to the treatment of these ailments. As such, they are entitled to summary judgment.

D.   Conditions of Confinement

To the extent Plaintiff's claims are construed as a conditions of confinement claim, they too are subject to dismissal. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity,

---

[5] *See Resper v. Shearin*, Civil Action No. PJM-13-2992, ECF No. 13, Ex. 3.

such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008), citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010), quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

Plaintiff has not demonstrated that he suffered a serious or significant injury as a result of the use of pepper spray on the tier to quell a mass disturbance, the removal of the chair from his cell, or the presence of fecal matter on the tier due to inmates flooding the tier. Further, Defendants' actions on October 7, 2010 were taken to restore order to the tier. As far as the

unsanitary conditions on the tier, the evidence demonstrates that Defendants took corrective action to contain the contaminate and then called the appropriate personnel to clean up the spills. There is no allegation, much less evidence that Defendants knew of an excessive risk of harm to Plaintiff's health or safety and disregarded it.

## Conclusion

      The dispositive motion filed on behalf of Defendants will be granted.    A separate Order follows.

 

                                                                                   /s/

                                                                    PETER J. MESSITTE

March 3, 2015                                               UNITED STATES DISTRICT JUDGE